IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JEANETTE GRACE STANDING, )
)
    Plaintiff, )
)
) CIV-13-336-L
v. )
)
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
   Security Administration, )
)
    Defendant. )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her applications for benefits in August 2010, alleging she became

disabled on July 1, 2007. (TR 134-143). At that time, Plaintiff was 40 years old. She alleged disability due to depression, anxiety, and agoraphobia, and she stated she stopped working on July 1, 2007, due to her condition. (TR 157). She has a GED and completed vocational training in March 2010 in medical transcription. (TR 158). Plaintiff previously worked as a cook. (TR 158).

In a written function report submitted to the agency, Plaintiff stated she could not be around strangers or go anywhere without a family member, she sometimes did not get out of bed, and loud noises and large crowds caused anxiety. (TR 165). She stated she cared for her "disabled" son "on a day to day basis," took care of her personal needs, cooked meals, performed household chores, did not drive, read books, worked puzzles, watched television, attended church, talked on the phone, and visited others via her computer. She described difficulty concentrating and handling stress. Plaintiff stated that she shopped in stores "late at night" to avoid other people. (TR 192).

Plaintiff's daughter, Chandra Berryhill, stated that her mother shopped for groceries and personal items once a month, that her mother could concentrate for about an hour, and that she could handle stress at "about an eight" on a one to ten scale. (TR 176, 178, 179). Ms. Berryhill stated that her mother could not "handle large crowds." (TR 180).

In a consultative psychological evaluation conducted in October 2010, Plaintiff stated she had been hospitalized for mental health treatment for four days in 2007 when she was drinking "heavily," had taken an overdose of "pills," and was undergoing marital and child custody problems. (TR 300). She stated she was "persistently anxious and stated things in

her environment frequently remind[ed] her of prior traumatic events," although the trauma she described was a previous relationship with a physically abusive boyfriend that ended seventeen years earlier in 1993. (TR 299).

Plaintiff lived with a niece, a sister, and her ten-year-old son. (TR 300). Plaintiff stated she saw a psychiatrist for medical management and saw a family physician but was not in counseling. She stated that she had previously worked as a cook for three years but left that job to care for her grandmother. (TR 300). Most recently, she had worked at a Goodwill store for seven months putting tags on clothing. Plaintiff described a long-term drug and alcohol abuse history but stated that she stopped drinking alcohol in December 2008 and stopped using illegal substances in 1999. (TR 301).

The examining psychologist, Dr. Danaher, conducted testing and reported that Plaintiff showed no cognitive impairments or deficits in attention or concentration. (TR 302-303). In Dr. Danaher's opinion, Plaintiff had an adequate ability to "understand, remember and carry out simple and complex instructions in a work related environment." (TR 304). The diagnostic impression was post-traumatic stress disorder, major depressive disorder, recurrent, moderate, and methamphetamine and alcohol dependence, both in remission by history/report. (TR 303).

A medical consultant for the agency, Dr. Mertens, Ph.D., reported in November 2010 that based on a review of the record Plaintiff could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. (TR 309).

In a hearing conducted in March 2010 before Administrative Law Judge Shepherd ("ALJ"), Plaintiff amended her alleged disability onset date to May 1, 2009. (TR 38). She indicated she had not worked since May 1, 2009, and that she had undergone treatment for alcohol abuse in 2008. (TR 40-41). She described "good" and "bad" days and daily panic attacks in which she felt like she was "going to die." (TR 43-44). She stated she did not leave her home "too often," although she drove occasionally, and that she had increased anxiety and panic in public. (TR 46). She stated that occasionally she could not concentrate or focus due to anxiety but on other days she could "do . . . what needs to be done around the house." (TR 48). If she did not take her medication, however, she was "unable to do pretty much anything." (TR 43, 48). Plaintiff stated that she took medication for arthritis in her shoulder and back that effectively relieved her symptoms. (TR 45-46). A vocational expert ("VE") also testified at the hearing.

The ALJ issued a decision in June 2012 in which the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2012, had not engaged in substantial gainful activity since May 1, 2009, her alleged onset date, and had severe impairments due to degenerative disc disease, obesity, anxiety disorder, and depressive disorder. (TR 21). Following the agency's sequential evaluation procedure, the ALJ found at step three that Plaintiff's impairments were not *per se* disabling. Specifically with respect to Plaintiff's mental impairments, the ALJ found that Plaintiff's impairments had resulted in "mild" restrictions in daily living activities, "moderate" limitations in social functioning, "moderate" difficulties in concentration, persistence, or pace, and "no" episodes

of decompensation of extended duration. (TR 22-23).

The ALJ found at step four that Plaintiff had the residual functional capacity ("RFC") to perform work at the medium exertional level[1] with restrictions. (TR 23). The ALJ found that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, and she could not climb ladders, ropes, or scaffolds. The ALJ further found that Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks, she could respond appropriately to supervisors, co-workers, and usual work situations, she could not have contact with the general public, and she could perform low-stress work "defined as occasional decision making and occasional changes in workplace settings." (TR 23-24).

Relying on the VE's testimony concerning the availability of jobs for an individual with this RFC for work (TR 51-53), the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act because there were jobs available in the economy that she could perform, including the jobs of janitor, punch press operator, warehouse worker, and food service worker. (TR 28). The Appeals Council declined to review this decision. (TR 1-4). Therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a

---

[1]Medium work requires the ability to lift up to 50 pounds and frequently lift or carry objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c). The agency has determined that the ability to do medium work is also a determination that the individual can do sedentary and light work. Id.

5

determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for Title II benefits expired on March 31, 2012. (TR 181). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on March 31, 2012. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Step Five - Available Jobs

Plaintiff's first contention is that the ALJ erred in finding she could perform the jobs of janitor and warehouse worker given the RFC finding and the description of those jobs in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"). The

6

Commissioner agrees that the step five finding with respect to these two jobs was erroneous. Because the ALJ found that Plaintiff had the ability to perform other jobs available in the economy, this admitted error with respect to the positions of janitor and warehouse worker does not alone warrant reversal of the Commissioner's decision. The Court must determine, however, whether there is substantial evidence in the record to support the step five finding that other jobs are available in the economy that Plaintiff can perform and whether the ALJ applied the correct legal standards.

Plaintiff contends that the ALJ erred in finding that she could perform the job of punch press operator given the RFC assessment and the DOT's description of this job. Plaintiff points to the DOT's description of this position as requiring the ability to perform maintenance on the machine such as lubricating sections of the machine. Plaintiff argues that in light of this job requirement a "logical assumption" could be made that the job required the worker to climb a ladder to complete this task.

The Commissioner responds that the DOT entry for punch press operator indicates only that the job requires occasional climbing and that the DOT does not specify whether the task of lubricating sections of the machine involves climbing at all. Thus, the Commissioner argues that no error occurred with respect to the ALJ's reliance on this job to support the step five nondisability determination.

The ALJ's RFC assessment limited Plaintiff to occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. The DOT describes a punch press operator as an individual who tends a punch press machine, including "lubricat[ing] specified

7

sections of machine, using grease gun and oilcan." DOT code 669.685-106, 1991 WL 686065. The punch press operator position is described as requiring occasional climbing, up to 1/3 of the time. Id. In the absence of any specific job description in the DOT that the worker in this position is required to climb ladders, ropes, or scaffolds, the job is consistent with the ALJ's RFC restriction of occasional climbing of stairs or ramps.

Moreover, the VE testified that the job information provided at the hearing was consistent with the DOT. Plaintiff has not shown that any actual conflict exists between the DOT's job information and the VE's testimony with respect to this position. The "logical assumption" suggested by Plaintiff is not evidence of an actual conflict. Under these circumstances, the ALJ was not required to investigate the issue further, and no error occurred with respect to the finding that this job was available to an individual with Plaintiff's RFC for work.

Plaintiff next contends that the ALJ erred in finding that she could perform the job of food service worker given the DOT's description of this job and the RFC assessment. The Commissioner responds that no error occurred in this respect.

The VE testified that the job of food service worker, DOT code 319.677-014, was available and consistent with the ALJ's RFC hypothetical. (TR 52). The DOT describes this position as one that requires the worker to "[p]repare[ ] and deliver[ ] food trays to hospital patients," including "[r]ead[ing] production orders on color-coded menu cards on trays to determine items to place on tray, "[s]erv[ing] trays to patients," "[c]ollect[ing] and stack[ing] dirty dishes on cart and return[ing] cart to kitchen," "[w]ash[ing] dishes and clean[ing] work

area," and possibly "assembl[ing] and serv[ing] food items to hospital staff in cafeteria." DOT code 319.677-014, 1991 WL 672771.

Contrary to Plaintiff's unsupported suggestion, nothing in this job description involves contact with the public. Rather, the job is described in the DOT as requiring contact with patients and hospital staff. Thus, the job identified by the VE is consistent with the RFC restriction of no contact with the public. Further, the VE testified that the job information provided at the hearing was consistent with the DOT. Plaintiff has not shown that any actual conflict exists between the DOT's job information and the VE's testimony with respect to this position. The ALJ did not err in finding that the job of hospital food service worker was available in the economy and fell within Plaintiff's RFC for work.

IV. <u>Analysis of Medical Evidence</u>

Plaintiff contends that the ALJ erred by ignoring probative medical evidence in the record. Plaintiff points to the record of her treatment at Red Rock Behavioral Health Services ("Red Rock") on an inpatient basis for a four-day period in August 2011. This treatment record reflects that Plaintiff voluntarily sought treatment at the Red Rock Crisis Unit on August 20, 2011, for suicidal thoughts. (TR 486). At the time of her admission, Plaintiff gave a history of "[r]acing thoughts, withdrawing from others, lack of motivation, reports she has not gotten off the couch in weeks, not taking care of personal hygiene, unable to eat or sleep," and suicidal thoughts. (TR 486). Plaintiff stated she had previously been treated for depression in 2007 and for drug and alcohol abuse in 2008, but had not sought follow-up counseling. (TR 486, 494, 497, 498). Plaintiff stated she had not seen her primary

9

care doctor, Dr. Hill, for two months. (TR 492).

A licensed professional counselor (LPC) assessed Plaintiff as having depressive disorder not otherwise specified ("NOS") and anxiety disorder NOS. (TR 498). Plaintiff was discharged from the Crisis Unit only four days later, and her treating case manger noted that at the time of discharge Plaintiff "displayed improved mood, sleep and appetite" and "appropriate affect and increased social interactions with staff and peers." (TR 508). She was prescribed an antidepressant medication and referred to a counseling clinic with an appointment date for an initial session. (TR 508, 511). There is no record that Plaintiff attended the appointment or sought other treatment from a mental health professional.

In a social security determination,

> [t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."

Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996)(citation omitted).

Unfortunately, the ALJ did not mention the Red Rock treatment record. The ALJ, however, stated that he had considered all of the evidence in the record and incorporated several mental restrictions into the RFC assessment. Plaintiff does not indicate why the record of her brief inpatient treatment at Red Rock was significantly probative evidence that should have been expressly discussed in the ALJ's decision. If anything, the Red Rock treatment record reflects that Plaintiff's depressive symptoms rapidly decreased with

medication and conservative measures such that she was discharged after only a short period. Further, Plaintiff did not seek counseling following her discharge as advised by her treating mental health professionals at Red Rock, indicating she did not believe she needed further mental health treatment. The ALJ did not err in failing to expressly discuss the Red Rock treatment record.

Plaintiff contends that the ALJ did not properly analyze Dr. Hill's medical opinion. The record shows that Plaintiff was occasionally prescribed medications for anxiety and depression by her primary care physician, Dr. Hill, beginning in May 2009. (TR 426). Dr. Hill noted in July 2009 that Plaintiff reported the medications were effective, and Dr. Hill noted that her depression and panic disorder were relieved. (TR 427). She reported to Dr. Hill in September 2009 that she was in school. (TR 424). Plaintiff reported in November 2009 that she did not want to take medication but would continue to take anti-anxiety medication as a sleeping aid. (TR 424). Her depression was noted to be "much better" in December 2009. (TR 413).

In May 2010, Plaintiff reported increased anxiety because of upcoming surgery, and Dr. Hill increased her anti-anxiety medication. (TR 411). In January 2011, she reported to Dr. Hill that she had increased anxiety due to deaths in her family. (TR 534). Her anti-anxiety medication was adjusted, and she was continued on anti-depressant and pain medication for "chronic anxiety and depression and diffused generalized arthritic pain." (TR 534).

In March 2011, Dr. Hill noted that Plaintiff complained of increased anxiety but that

11

he refused to increase the dosage of her anti-anxiety medication and that she "seem[ed] a lot more calm." (TR 534). Plaintiff did not show up for a scheduled appointment in July 2011. (TR 534).

Plaintiff did not return to Dr. Hill for treatment until March 2012. At that time, Dr. Hill noted Plaintiff was seeking the doctor's assistance with her social security disability application. Dr. Hill noted Plaintiff's report that she had been receiving medication through Red Rock and was "feeling better [than she had] in sometime." (TR 536). Dr. Hill also noted that Plaintiff "has not been able to work since 2007, she is very emotional distraught [sic] and has chronic depression. Hopefully this will last but I am not sure that it will." (TR 536). He noted she was on three medications that were "perfect for her" and she had "done well on them in the past." (TR 536). Dr. Hill also noted that

> [h]er short-term memory is very good but I can't do the test to see if she can remember after two hours but it is fair at now cause [sic] I gave her several questions and then I went back in 20 mins [sic] and asked her the answers and she answered them for me . . . . I do not feel that she can be under the stress of any kind of job and I don't think she can be retrained. They are going to court to see about this. It is my impression that she is totally disabled. She should be able to stay around her children and hopefully they can keep her mind occupied and keep her from thinking about the depression.

(TR 536).

In addition to this medical opinion contained in the physician's treatment notes, Dr. Hill completed a Medical Opinion Regarding Mental Residual Functional Capacity, dated March 2, 2012, in which the physician opined that Plaintiff was "unable to carry out duties

12

required for any working condition starting 2007." (TR 514). He further opined that Plaintiff would be "[u]sually able" to remember worklike procedures and understand, remember and carry out very short and simple instructions, she was "[a]ble about ½ of the time" to maintain attention for two hour segments, and she was "[a]ble about ½ of the time" to maintain regular attendance and punctuality within customary tolerances. (TR 514). Dr. Hill opined on this form that Plaintiff was "disabled from any work." (TR 514).

When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "where the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007). "Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300). An opinion that a claimant is disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner.]" Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).

In the decision, the ALJ addressed Dr. Hill's medical opinions and provided several reasons for giving "little weight" to the opinions. The ALJ explained that Dr. Hill's treatment notes indicated Plaintiff had been noncompliant with her medications and medical advice. The ALJ noted that while Dr. Hill stated in a treatment note in March 2012 that she was unable to work he also noted that she was feeling better and doing well on her medications and that her short-term memory was very good. (TR 25-26). The ALJ also observed that there was an extended gap in Plaintiff's treatment with Dr. Hill for approximately one year, and that she had only been seeing Dr. Hill for about one month after over a year's gap in treatment when he authored the March 2012 medical opinions. (TR 26). The ALJ further reasoned that other medical evidence in the record, including the assessments by the examining consultative psychologist, Dr. Danaher, and the state agency medical consultants indicated Plaintiff was capable of performing some work activity with mental restrictions. (TR 26). The ALJ also reasoned that Dr. Hill was a primary care physician and not a mental health care specialist and that his opinion relied largely on Plaintiff's subjective complaints and not objective medical findings. (TR 26). Finally, the ALJ reasoned that the opinion was not consistent with Plaintiff's own statements concerning her daily living activities. (TR 26).

Plaintiff contends that the ALJ's analysis of Dr. Hill's medical opinions was faulty because the ALJ "skipped the first step" of the requisite evaluation. However, the ALJ's finding that Dr. Hill's opinions were entitled to little weight implicitly included the finding that the opinions were not entitled to controlling weight. See Armijo v. Astrue, 385

14

Fed.Appx. 789, 794-795 (10th Cir. 2010)(unpublished op.). No error occurred in this respect.

Plaintiff contends that the ALJ did not point to other evidence in the record but relied on "his own speculative inferences" in determining what weight to give to Dr. Hill's opinions. Plaintiff's Opening Brief, at 13. Plaintiff's argument is contrary to the record. The ALJ's decision includes a thorough analysis of Dr. Hill's medical source opinions set forth on the written mental RFC form and in his treatment notes. The decision provides reasons that are well supported by the record for assigning little weight to the physician's opinions.

As the ALJ found, Dr. Hill treated Plaintiff for a variety of medical issues and occasionally prescribed anxiety and anti-depressant medications for her. However, as the ALJ explained in the decision, Dr. Hill's opinions that Plaintiff's mental impairments were disabling were not consistent with the physician's treatment records or other objective medical evidence in the record. The ALJ also properly considered both the frequency with which Plaintiff sought treatment from Dr. Hill for her mental impairments, her medications, and her lack of compliance with treatment and medical advice. As the ALJ pointed out, Dr. Hill's treatment records did not support the extreme limitations he placed on her ability to work and a lengthy, one-year gap in medical treatment had occurred just before the March 2012 medical source opinions. The ALJ also observed that Dr. Hill's medical opinions were not consistent with Plaintiff's own statements concerning her daily living activities. The record reflects that Plaintiff completed vocational training in medical transcription in 2010, during the period of time that she alleged she was disabled due to mental impairments. No

error occurred with respect to the ALJ's analysis of Dr. Hill's opinions.

Substantial evidence in the record, specifically, the assessments of Dr. Danaher and Dr. Mertens, supports the ALJ's determination that Plaintiff had the RFC to perform a limited range of work activity, including the ability to understand, remember, and carry out simple, routine, and repetitive tasks and respond appropriately to supervisors, co-workers, and usual work situations, and perform low-stress work that did not involve contact with the general public. The VE's testimony provides substantial support for the ALJ's step five determination that there are jobs available in the economy which Plaintiff can perform, including the jobs of punch press operator and hospital food service worker, and therefore the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____February 13th_____, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this \_\_\_\_24th\_\_\_\_ day of \_\_\_\_January\_\_\_\_, 2014.

*GARY M. PURCELL*
UNITED STATES MAGISTRATE JUDGE